Dear Ms. Wesley:
We are in receipt of documents relating to the proposed area of incorporation of Stoney Point, Parish of Washington. You ask this office to advise the Governor if a special election should be called for the people to vote on the question of whether the unincorporated area shall become a municipality.
R.S. 33:1 provides the requirements for incorporating a municipality, including a petition signed by at least twenty-five percent of the electors residing in the area proposed for incorporation, as certified by the registrar of voters. See R.S. 33.1.[1]
The documents received by our office for review include:
 1. A legal description of the proposed area of incorporation, stating that the area constitutes a contiguous area sought to be incorporated as the Village of Stoney Point.
 2. A statement that the number of inhabitants residing in the unincorporated area amounts to 571 people, based on the 2000 federal census.
 3. A statement of the assessed value of the real property in the area of $16,980,200 according to the 2005 tax roll.
 4. A listing of the public services the municipal corporation proposes to render and a plan for these services, as indicated:
 Protect the rights of the property owners and the quality of life in Stoney Point as allowed by Louisiana law for municipalities; grant franchises so as to permit and regulate the use of public utilities; attempt to obtain federal and/or state grants of funds to be *Page 2 
used for village improvements; to provide road maintenance and improvements based on availability of funds; to achieve community development through these programs; to support these programs with funds to be derived from utility franchise fees; insurance premium taxes and by such other means which become available.
 5. A statement of the desired corporate name as Stoney Point.
 6. A listing of the names of those persons designated as chairpersons for the petition for incorporation.
The petition received by this office contains the requirements of R.S.33:1(A), as listed above. Further, the registrar of voters has certified that the petition contains the signatures of 25% of the electors residing in the area proposed for incorporation. See R.S. 33:2(C).[2]
It is the opinion of this office that since the petition complies with the requirements of law, the Governor shall call a special election to be held on the next possible special election date specified in R.S.18:402(F)[3] for the purpose of determining whether the unincorporated area shall become a municipality.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY: __________________________
 KERRY L. KILPATRICK ASSISTANT
 ATTORNEY GENERAL
[1] R.S. 33:1 states, in its entirety:
§ 1. Petition for incorporation; contents; circulation; required signatures
Residents of any unincorporated area with a population in excess of two hundred inhabitants may propose the incorporation of the area as provided in this Subpart. A petition proposing the incorporation of the area shall be prepared and shall contain the following:
(1) A legal description of the area proposed for incorporation and the statement that all lands included in the area proposed for incorporation and the statement that all lands included in the area constitute a contiguous area.
(2) A statement of the number of inhabitants residing in the unincorporated area. Such statement shall be based on the latest federal decennial census or another current population report or count which is verifiable.
(3) A statement of the assessed value of the real property located in the unincorporated area.
(4) A listing of the public services the municipal corporation proposes to render to the area and a plan for the provision of these services.
(5) A statement of the corporate name desired for the new municipality.
(6) The names of two or more chairpersons for the petition for incorporation who shall serve as agents for the petitioners in all legal matters, including the receipt of notices. Notice will be sufficient if served on any one of the chairpersons.
B. (1)(a) The signatures of twenty-five percent of the electors residing in the area proposed for incorporation shall be required in order to file the petition as provided in R.S. 33:2(A).
(b) All electors, whether or not they own land, shall be eligible to sign the petition.
(c) The signatures of the electors must reasonably correspond with their signatures on file in the office of the registrar of voters.
(d) More than one copy of the petition may be circulated and signatures of electors on any copy of the petition shall be counted as part of the required twenty-five percent.
(2) Any elector may withdraw his name from the petition by filing a signed statement of withdrawal with the registrar of voters at any time before the registrar of voters certifies that twenty-five percent of the electors residing in the area proposed for incorporation have signed the petition as provided by R.S. 33:2(C).
[2] R.S. 33:2(C) states:
C. If the registrar of voters determines that the required twenty-five percent of electors have signed the petition, upon the initial presentation or upon the expiration of the sixty-day period for obtaining additional signatures, the registrar of voters shall issue a certificate stating that twenty-five percent or more of the electors residing in the area proposed for incorporation have signed the petition. The registrar of voters shall forward this certificate to the governor.
[3] R.S. 18:402(F) states:
F. Bond, tax, or other elections. Every bond, tax or other election at which a proposition or question is to be submitted to the voters shall be held only on one of the following dates:
(1) The second to last Sunday in October or the fourth Saturday after the second to last Saturday in October of 1983 and every fourth year thereafter.
(2) The first Saturday in October or the first Tuesday after the first Monday in November of even-numbered years.
(3) The first Saturday in April or the fourth Saturday after the first Saturday in April of any year or on the second or third Saturday in February or fourth Saturday after the second or third Saturday in February, as the case may be, during the presidential election year, if the statewide presidential preference primary election is scheduled on the second or third Saturday in February of the presidential election year; however, commencing in 1994 and every fourth year thereafter, the first Saturday in April shall not be applicable in a parish containing a municipality with a population of four hundred seventy-five thousand or more.
(4) The third Saturday in October or the fourth Saturday after the third Saturday in October of 1985 and every fourth year thereafter.
(5) The third Saturday in July of any year, which date, in addition to the other dates provided for in this Subsection, shall be exclusively for elections on bonds, taxes, and other propositions or questions and for no other kind of election, except for a special election called to fill a vacancy in the office of state legislator.
(6) For a parish containing a municipality with a population of four hundred seventy-five thousand or more, the first Saturday in February or fourth Saturday after the first Saturday in February in 1986 and every fourth year thereafter.
(7) In case of an emergency, upon application to and approval by the State Bond Commission by two-thirds vote of its total membership, and with the approval of the governor, the governing authority of a parish, of a municipality, or of a parish or city school board may conduct a bond or tax election on Saturday which is not provided for in this Subsection.